Filed 12/23/24  P. v. Hernandez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO HERNANDEZ,<br><br>    Defendant and Appellant. | D082377<br><br><br><br>(Super. Ct. No. SCS317748) |

APPEAL from a judgment of the Superior Court of San Diego County, Enrique E. Camarena, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.


A jury found Francisco Hernandez guilty of multiple sex offense counts based on years of sexually abusing and molesting his stepson and nephew.

Hernandez raises three main arguments on appeal. First, he contends the trial court erred in overruling an objection to the prosecutor's peremptory challenge of a prospective juror under Code of Civil Procedure section 231.7.[1] Second, he urges the court erred in excluding evidence of a family property dispute, which he argues was relevant to show Hernandez's nephew had a motive to fabricate the allegations. Third, Hernandez claims the court did not ensure he knowingly and intelligently waived his right to a jury trial on an aggravating factor. We conclude Hernandez's arguments have no merit and therefore affirm.

BACKGROUND

In 2023, the San Diego District Attorney filed a second amended information charging Hernandez with 48 counts of various sexual offenses against his stepson, B.C., and his nephew, J.R.S.

The information alleged Hernandez committed the following crimes against B.C.: aggravated sexual assault of a child (Pen. Code, § 269, subd. (a); count 1); sodomy with a child who was 10 years of age or younger (*id.*, § 288.7, subd. (a); counts 2-5); oral copulation with a child 10 years of age or younger (*id.*, § 288.7, subd. (b); counts 6-9); lewd acts upon a child (*id.*, § 288, subd. (a); counts 10-13); sodomy with a person under 14 years of age and more than 10 years younger (*id.*, § 286, subd. (c)(1); counts 14-17); oral copulation with a person under the age of 14 years and more than 10 years younger (*id.*, § 287, subd. (c)(1); counts 18-21); and lewd acts upon a child (*id.*, § 288, subd. (a); counts 22-25).

The information alleged Hernandez committed the following crimes against J.R.S.: aggravated sexual assault of a child (Pen. Code, § 269, subd. (a); count 26); sodomy with a person under 14 years of age and more

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

than 10 years younger (*id.*, § 286, subd. (c)(1); counts 27-28); oral copulation with a person under 14 years of age and more than 10 years younger (*id.*, § 287, subd. (c)(1); counts 29-32); sexual penetration by foreign object of a person under 14 years of age and more than 10 years younger (*id.*, § 289, subd. (j); counts 33-34); lewd acts upon a child (*id.*, § 288, subd. (a); counts 35-40); sodomy by use of force (*id.*, § 286, subd. (c)(2)(A); counts 41-42); sexual penetration by use of force (*id.*, § 289, subd. (a); counts 43-44); and forcible oral copulation (*id.*, § 287, subd. (c)(2)(A); counts 45-48).

As enhancements to the lewd act charges (counts 10 through 13, 22 through 25, and 35 through 40), the information alleged Hernandez engaged in substantial sexual conduct with a child under 14 years of age within the meaning of Penal Code section 1203.066, subdivision (a)(8).

As aggravating factors, the information alleged that Hernandez took advantage of a position of trust and confidence (Cal. Rules of Court, rule 4.421(a)(11)), and that B.C. and J.R.S. were particularly vulnerable victims (rule 4.421(a)(3)).

B.C. and J.R.S. were adults at the time of trial. After six days of evidence and five days of deliberations, the jury found Hernandez guilty of 35 counts and found the enhancement allegations to be true. The jury deadlocked on counts 4, 5, 16, 17, 28, and 41 through 48. After declaring a mistrial on those counts, the court exercised its discretion to dismiss them.

While the jury was deliberating, the court accepted Hernandez's waiver of his right to a jury trial on the aggravating factors. The prosecutor subsequently dismissed the two particularly vulnerable victim aggravating factors. After a bench trial, the court found the remaining aggravating factor of taking advantage of a position of trust and confidence to be true. The court sentenced Hernandez to a prison term of 60 years plus 140 years to life.

3

DISCUSSION

A. Peremptory Challenge of Prospective Juror No. 7

Hernandez contends the court erred in overruling defense counsel's objection to the prosecutor's peremptory challenge of Prospective Juror No. 7 (Juror 7). He argues the prosecutor's reason for excusing Juror 7 was presumptively invalid under section 231.7. He further argues the prosecutor offered no evidence to overcome the presumption and the court failed to comply with section 231.7 in permitting the challenge. We conclude the prosecutor did not base the challenge on a presumptively invalid reason and was therefore not required to show evidence to overcome the presumption. The court likewise was not required to find the presumption was overcome by clear and convincing evidence. And contrary to Hernandez's claim, the court did not rely on a different basis for permitting the challenge.

1. Additional Facts

Prospective jurors received a questionnaire that asked for biographical information and posed questions relevant to the jurors' ability to be fair and impartial. The jurors provided their answers on the record and the court asked follow-up questions.

Question number 13, "[h]ave you or any of your close friends or relatives ever been arrested, a witness, victim or any way involved in any criminal investigation?", prompted the following exchange with Juror 7:

> "PROSPECTIVE JUROR NO. 7: And I have a close friend that was arrested a few times, problems with his wife or something.
>
> "THE COURT: Who did?
>
> "PROSPECTIVE JUROR NO. 7: One of my closest friends.

4

"THE COURT: Okay. Anything about that that you think he was treated fairly?

"PROSPECTIVE JUROR NO. 7: No.

"THE COURT: How long ago did your friend last get in trouble?

"PROSPECTIVE JUROR NO. 7: This was like a few years ago.

"THE COURT: Okay. Would that in any way affect how you evaluate evidence here?

"PROSPECTIVE JUROR NO. 7: Oh, no.

"THE COURT: Okay."

After the prospective jurors answered the court's questions, defense counsel and the prosecutor asked follow-up questions. The prosecutor engaged in the following dialogue with Juror 7:

"[PROSECUTOR]: Okay. Juror No. 7, you said that you had a close friend that was arrested several times and was not treaty fairly.

"PROSPECTIVE JUROR NO. 7: Yeah.

"[PROSECUTOR]: Can you tell me about that? Is that --

"PROSPECTIVE JUROR NO. 7: Well, just like he had problems with his wife. And I think that story is he called the police. And I -- if the Court recalls, on that person -- and that person gets arrested and he didn't do anything wrong.

"[PROSECUTOR]: Okay.

"PROSPECTIVE JUROR NO. 7: And made, like, some serious allegations that weren't true.

"[PROSECUTOR]: Was he -- were charges brought against him? Was -- did they ever have to go to court or --

"PROSPECTIVE JUROR NO. 7: Oh, no.

"[PROSECUTOR]: Was a case filed?

"PROSPECTIVE JUROR NO. 7: No.

"[PROSECUTOR]: He was just -- like he was arrested and then they realized there was no evidence?

"PROSPECTIVE JUROR NO. 7: Yes.

"[PROSECUTOR]: Okay. Do you think there's anything about that that kind of holds -- leads you to believe that, you know, the system is flawed and I should be held to a higher standard of proof than the law says?

"PROSPECTIVE JUROR NO. 7: No."

The prosecutor exercised a peremptory challenge to excuse Juror 7 and defense counsel objected under section 231.7. There was no dispute Juror 7 was African-American. When the court asked the reasons for the challenge, the prosecutor stated:

"[PROSECUTOR]: . . . my reasons for dismissing him are that he said he has a very close friend that has been arrested several times and not treated fairly. This case rests specifically on the defense of false accusations. And so I think that this person saying that he had a friend that was -- what sounds like to me, was my interpretation of what he was saying, he was falsely accused several times, unfairly arrested,

6

unfairly treated, makes him a biased juror for purposes of the case where a false accusation is the defense."

The court noted section 231.7, subdivision (e), "has a presumptively invalid factor as a close relationship with people who have been stopped, arrested or convicted of a crime. I see that in a slightly -- different than what [the prosecutor] is saying." The prosecutor further argued as to how her reason was different:

> "[PROSECUTOR]: Well, your Honor, first of all . . . it's also whether or not that is relevant to the particular case. So a bad experience with law enforcement . . . in itself is not . . . a reason to dismiss someone for cause. However, in -- for example, a PC 69 case where the entirety . . . relates to police conduct . . . that is relevant, that is a valid basis in that type of case.
>
> "So, again, I'm relating that to this particular case where the defense has made it very clear . . . his defense that his client has been falsely accused of something . . . just to hear him say that his close friend . . . has been arrested not once but several times and not treated fairly.
>
> "[S]o to me that indicates that this juror is going to view this case under that lens, that people are falsely arrested. People are falsely accused. People are not treated fairly. And I feel that I'll be held to a higher burden. I tried to press him on that issue, and he really was very unresponsive. He just kind of -- I don't know that he even understood the question. I think that's another -- another thing that I had written down about him, is that he had needed clarification on several of the judge's questions. And he just didn't seem to be . . . following. And any questions that he was asked, I don't think he responded super responsively to the question.

7

"So I don't have confidence that he's not going to hold that against me being in a situation with his friend and that he would kind of give more weight to this falsely accused defense, and I would have more of an uphill battle."

The court observed Juror 7 "said a close friend was arrested, that bothered him . . . , said his friend was falsely accused several times of domestic violence . . . ." The court noted section 231.7, subdivision (e) provides the following, among others, are presumptively invalid reasons for exercising a peremptory challenge: (1) expressing a distrust or having a negative experience with law enforcement; (2) expressing a belief that law enforcement engages in racial profiling; and (3) having a close relationship with someone who was arrested. The court reasoned the Legislature could have but did not make expressing concerns about false accusations a presumptively invalid reason.

The court also agreed Juror 7 seemed to not understand some legal concepts but explained "I don't think that, in and of itself, is cause because at times he very clearly answered questions directly."

The court concluded:

> "But this concept of false accusations and not being the -- I guess, the crux of this particular case, that isn't in the 231.7. I do see the distinction because it's different than false arrest. False arrest, I take it more to include an officer acting badly or an officer -- the opinion of the arrestee being the -- the prospective juror.
>
> "So after evaluating the reasons given to justify the peremptory challenge in light of the totality of the circumstances, I'm finding there is not a substantial likelihood that an objectively reasonable person

8

would be raised [*sic*] or ethnicity, in this particular
case, a factor in the use of the appropriate challenge."

The court overruled the defense objection under 231.7 and excused Juror 7.

### 2. Applicable Law

"The Legislature enacted section 231.7, effective in criminal trials beginning January 1, 2022, to establish 'a new process for identifying unlawful bias in the use of peremptory challenges during jury selection' because studies showed that the existing *Batson/Wheeler* analysis . . . was inadequate to prevent racial discrimination." (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 539-540.)

Section 231.7 provides "[a] party shall not use a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race . . . ." (*Id.*, subd. (a).) Once a party or the court objects to the improper use of a peremptory challenge, the party seeking to exercise the challenge must "state the reasons" for it. (*Id.*, subds. (b)-(c).) The statute provides "[t]he court shall evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances," and "shall consider only the reasons actually given." (*Id.*, subd. (d)(1).) "If the court determines there is a substantial likelihood that an objectively reasonable person would view race . . . as a factor in the use of the peremptory challenge, then the objection shall be sustained." (*Ibid.*)

Section 231.7, subdivision (e), provides a list of reasons that are "presumed to be invalid unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race . . . , and that the reasons articulated bear on the prospective juror's

9

ability to be fair and impartial in the case." "To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.*, subd. (f).) The presumptively invalid reasons include "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system" (*id.*, subd. (e)(1)), and "[h]aving a close relationship with people who have been stopped, arrested, or convicted of a crime" (*id.*, subd. (e)(3)).

Section 231.7 provides "[t]he denial of an objection . . . shall be reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence." (*Id.*, subd. (j).)

3. Analysis

Hernandez argues the prosecutor's reason for excusing Juror 7 was presumptively invalid under section 231.7, subdivision (e)(1) and (3) because "it amounted to having a close relationship with someone who has had a negative experience with law enforcement." We disagree.

As an initial matter, Hernandez conflates section 231.7, subdivision (e)(1) and (3). Section 231.7, subdivision (e)(1) concerns a peremptory challenge based on the prospective juror's own negative experience with law enforcement. In response to a question about any negative or positive contact with law enforcement, Juror 7 stated, "Oh, no. I never got in contact with law enforcement." And the prosecutor's stated reason for excusing him had no relation to his own experience with law enforcement. Therefore, section 231.7, subdivision (e)(1) does not apply.

10

Section 231.7, subdivision (e)(3) concerns a peremptory challenge based on the prospective juror having a "close relationship" with someone who was arrested. While Juror 7 had a close friend who was arrested, that was not the prosecutor's reason for excusing him. Instead, the prosecutor explained that Juror 7's friend being falsely accused raised a particular concern in this case because Hernandez's defense was that he was falsely accused. This is distinguishable from *People v. Uriostegui* (2024) 101 Cal.App.5th 271 (*Uriostegui*), on which Hernandez relies, where the prosecutor's "overarching facially neutral reason" was based on a presumptively invalid reason. (*Id.* at p. 280.)

In *Uriostegui*, the Court of Appeal rejected the People's argument that "lack of life experience" was not a presumptively invalid reason for excusing a prospective juror. (*Uriostegui, supra*, 101 Cal.App.5th at p. 280.) When explaining the reason below, the prosecutor stated the juror " 'told us that . . . she works at Taco Bell. That she has an [a]ssociates degree in Arts. No military service. That she is not currently working. That she has a significant other but no kids, no prior jury service. I think the People's peremptory was based in a lack of life experience. . . .' " (*Id.* at p. 276.) The Court of Appeal reasoned the juror's "alleged lack of life experience was based in part on the presumptively invalid reason of 'lack of employment or underemployment' " under section 231.7, subdivision (e)(11). (*Uriostegui,* at p. 280.) A party cannot "bury presumptively invalid reasons under an overarching facially neutral reason, such as 'lack of life experience.' " (*Ibid.*)

Unlike in *Uriostegui*, here, the prosecutor did not give an overarching reason that buried or encompassed a presumptively invalid one. The opposite is true. The prosecutor's reason was narrower than the presumptively invalid one. That is, she was concerned Juror 7 would be

11

biased because he believed his friend was falsely accused—not merely arrested. Because the prosecutor did not rely on a presumptively invalid reason to challenge Juror 7, she was not required to overcome the presumption and the court was not required to find that the presumption was overcome.

Hernandez also argues the prosecutor's concern is not supported by the record, urging Juror 7 never said his friend was falsely accused. We again disagree. When the prosecutor asked Juror 7 to elaborate, he stated his friend was arrested due to "serious allegations that weren't true." The prosecutor and the court fairly interpreted this as meaning the friend was falsely accused.

Finally, Hernandez urges the court "misapplied the new statutory grounds it was required to consider when it concluded the challenge of [Juror 7] was proper based on the fact that the prospective juror was not very detailed in his answers to questions by the court and counsel and the court had to explain several legal concepts to him." Hernandez appears to argue we cannot consider this reason on appeal because the record does not support it and the trial court did not make any "actual findings" in this regard. He also appears to argue the trial court improperly relied on this reason to overcome the prosecutor's presumptively invalid reason. We need not address these arguments because while the court noted this observation, it did not conclude the peremptory challenge was proper on this basis. Instead, it relied on the false accusation reason stated by the prosecutor, concluding that reason was different than the presumptively invalid reason under section 231.7, subdivision (e)(3). As discussed above, we agree.

In sum, the prosecutor's stated reason for challenging Juror 7, that he had a close relationship with someone who was falsely accused, was not

presumptively invalid under section 231.7.  Thus, there was no presumption to overcome.  Hernandez fails to show the court erred in overruling the defense objection to the prosecutor's peremptory challenge.

### B. Exclusion of Evidence of Family Property Dispute

Hernandez contends the court erred in excluding evidence of a family property dispute to show J.R.S.'s motive to fabricate the allegations that Hernandez sexually abused him.  We conclude the trial court was within its discretion to exclude the evidence as irrelevant for this purpose.

### 1.  Additional Facts

When Hernandez's parents passed, they left a house to their daughters and another house to their sons.  J.R.S.'s mother was Hernandez's sister and she had an interest in the house shared among the sisters.

The property dispute concerns only the house shared among the brothers—Hernandez, Rogelio, and Roberto.  The house was originally in Rogelio's name.  He lived there for several years and spent a substantial amount on improvements.  Amid a divorce, he later conveyed the property to Hernandez.  A dispute arose between Hernandez and Rogelio over whether, in the event the brothers sold the house, the sale proceeds should be divided equally among the brothers or if Rogelio should first be compensated for the amount he spent on improvements.  Around the time the property dispute arose, J.R.S.—an adult at the time—disclosed the sexual abuse to his uncle Rogelio.

Defense counsel argued the timing of J.R.S.'s reporting and the fact that J.R.S. reported to someone involved in the property dispute was "very important" to show J.R.S. had a motive to fabricate the allegations.  When the trial court inquired about J.R.S.'s knowledge of the property dispute,

13

defense counsel stated his understanding that J.R.S. was aware of it, and the prosecutor responded:

> "I don't know whether or not he was aware of the fact that there was a property dispute or not. I will ask him and find out that specific question. What I do know is I asked him what he knows about the property dispute. His answer to me was nothing. I have no idea. That's between the two brothers. I don't talk to my mother. She's a sister. She doesn't stand to inherent that property anyway."

The trial court excluded evidence of the property dispute for the purpose of showing J.R.S.'s motive, reasoning J.R.S. had no connection to the dispute. The court indicated the evidence would be admissible to impeach Rogelio should the prosecution call him to testify as the fresh complaint witness. The prosecutor informed the court she did not intend to call Rogelio in her case in chief as the fresh complaint was to J.R.S.'s other uncle, Roberto. Although Roberto was not part of the dispute, because he was in a position to benefit financially depending on how the dispute resolved, the court ruled it would allow the defense to impeach him with evidence of the property dispute as well. The prosecutor did not intend to call him as a witness.

Defense counsel asked the court to reconsider the issue at the next hearing, arguing the timing of the dispute and J.R.S.'s disclosure to the people directly benefiting from the property tended to show his motive to fabricate the allegations. The court reasoned J.R.S.'s reporting close in time and to those involved in the dispute was too attenuated to connect him to the dispute. There was no showing J.R.S. "otherwise involved himself in any other way," "had any skin in the game," or "would benefit it [*sic*] in any way by the timing and/or reporting his victimization at that particular time."

14

Subsequently, defense counsel informed the court that Rogelio had demanded that Hernandez give the family $20,000 and they would "drop everything." The prosecutor disputed defense counsel's representation, contending instead that the $20,000 was representative of Rogelio's share of the sale proceeds but there was no bribe relating to this case or the allegations. The court reasoned that even if this bribe did occur, there was still "no tangible connection" to J.R.S. There was no showing that those allegedly bribing Hernandez "have control over" J.R.S. Thus, the court maintained its ruling that evidence regarding the property dispute was irrelevant to J.R.S.'s motive or credibility.

2. Applicable Law

Only relevant evidence is admissible. (Evid. Code, § 350.) " 'Relevant evidence' means any evidence, including evidence relevant to the credibility of a witness . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210.) "Evidence tending to show a witness has some motive, bias, or interest that might induce false testimony has long been a permissible form of impeachment." (*People v. Mickle* (1991) 54 Cal.3d 140, 168, citing Evid. Code, §§ 210, 780, subd. (f).) "The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish' " a material fact such as motive, bias, or interest. (*People v. Carter* (2005) 36 Cal.4th 1114, 1166.) Evidence is irrelevant if it leads only to speculative inferences. (*People v. Morrison* (2004) 34 Cal.4th 698, 711 (*Morrison*).)

Trial courts have broad discretion in relevancy determinations but lack discretion to admit irrelevant evidence. (*People v. Hamilton* (2009) 45 Cal.4th 863, 913.) We use an abuse of discretion standard to review the trial court's rulings determining the relevance and admissibility of evidence.

(*People v. Garcia* (2001) 89 Cal.App.4th 1321, 1334.) The court abuses its discretion only when it acts in an "arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

3. Analysis

Hernandez urges the property dispute tended to show J.R.S. had a motive to lie about Hernandez sexually abusing him. According to Hernandez, J.R.S. was well-aware of the property dispute. He admits J.R.S. would not profit from the resolution of the dispute yet urges "gaining favoritism within the family" or assisting Rogelio in the dispute "could easily have influenced" him. He also urges the significance of defense counsel's insistence that J.R.S. wanted Rogelio and Roberto to own the house.

Hernandez, however, points to nothing in the record on appeal showing J.R.S. had any connection to the dispute or any interest in the outcome. While J.R.S. may have been aware of the fact there was a dispute, he had no part in it and knew nothing about it. As the court noted, there was no showing J.R.S. had "any skin in the game." One can only speculate that knowledge of the property dispute and his relationship with those involved, without more, gave J.R.S. motive to fabricate allegations that his uncle Hernandez sexually abused him. Evidence leading only to speculative inferences is irrelevant. (*Morrison, supra*, 34 Cal.4th at p. 711.) Thus, the court did not abuse its discretion in excluding evidence regarding the property dispute for the purpose of showing J.R.S. had a motive to lie.

C. Waiver of Jury Trial on Aggravating Factor

Hernandez contends the court failed to secure a knowing and intelligent waiver of his right to a jury trial on the aggravating factor of taking advantage of a position of trust and confidence. Specifically, he argues

16

the court's advisement did not include descriptions of certain mechanics of a jury trial and certain confirming questions, as recommended by the California Supreme Court in *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*). Thus, he claims his waiver was not made with full awareness of the right being abandoned and the consequences of his decision. Based on the totality of the circumstances, we disagree.

   1. Additional Facts

During a pretrial hearing, defense counsel said he would speak to Hernandez about a potential bench trial on the aggravating factors. At another pretrial hearing, defense counsel informed the court that he "spent a significant amount of time" discussing it with Hernandez, who elected to proceed by jury.

After the jury trial on the charged offenses and while the jury was deliberating, the court held a hearing to address defense counsel's off the record indication that Hernandez would like to waive his right to a jury trial on the aggravating factors. On the record, defense counsel stated, "I've had an opportunity to speak with [Hernandez]," acknowledged that the defense previously selected a jury trial, and informed the court that Hernandez would like to have a bench trial.

The court engaged in the following exchange with Hernandez:

> "THE COURT: Okay. Mr. Hernandez, you understand you have a right to a jury trial at every stage, and you're waiving your right to have the jury decide the aggregates that are alleged at the end of the case. And it's my understanding [the prosecutor] is going to dismiss two of them. In any event, the one that will be -- that you're submitting that I can decide would be whether or not there -- you were in a position of trust. Be that as it may, you're waiving your right to a jury trial as to those particular factors; is that right?

17

"THE DEFENDANT:  Yes.

"THE COURT:  All right.  So we'll note the jury waiver as to aggravant factors. . . ."

2.  Applicable Law

A defendant's jury waiver must be " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." ' " ' " (*Sivongxxay, supra*, 3 Cal.5th at p. 166, quoting *People v. Collins* (2001) 26 Cal.4th 297, 305.)

The court in *Sivongxxay* offered "general guidance" to help ensure a jury trial waiver is knowing and intelligent.  (*Sivongxxay, supra*, 3 Cal.5th at p. 169.)  It recommended that trial courts advise defendants of the basic mechanics of a jury trial including, but not limited to, that "(1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence."  (*Ibid.*)  The court also recommended that the trial court take steps to ensure the defendant comprehends what the jury right entails, such as asking whether the defendant had an adequate opportunity to discuss the decision with counsel, asking whether counsel explained the differences between a jury and bench trial to the defendant, or asking the defendant directly whether he or she understands the right being waived.  (*Id.* at p. 170.)

The court emphasized that its guidance was "advisory" and "not intended to limit trial courts to a narrow or rigid colloquy."  (*Sivongxxay, supra*, 3 Cal.5th at p. 170.)  The test of a valid waiver turns on whether the

18

record affirmatively shows the waiver was knowing and intelligent under the totality of the circumstances. (*Id.* at p. 167.) "Reviewing courts must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary." (*Id.* at p. 170.) Additionally, a reviewing court will "independently examine the entire record" to determine whether this standard has been met. (*People v. Burgener* (2009) 46 Cal.4th 231, 241.)

3. Analysis

Hernandez argues the trial court's advisement was insufficient because it did not explain all the mechanics of a jury trial that were suggested in *Sivongxxay*. However, Hernandez had just undergone a jury trial on the charged offenses, had participated in jury selection through his counsel, and was awaiting a unanimous verdict by the 12 jurors. Courts have considered an individual defendant's experience with the criminal justice system when assessing whether a defendant knowingly and intelligently waived the jury right. (*Sivongxxay, supra*, 3 Cal.5th at p. 167 [considering that the defendant had experience with the criminal justice system as relevant circumstance in concluding the defendant's jury waiver was knowing and intelligent]; *People v. Roles* (2020) 44 Cal.App.5th 935, 951 [same].) This case is distinguishable from *People v. Jones* (2018) 26 Cal.App.5th 420, on which Hernandez relies, where the court considered the defendant's *lack* of experience with the criminal justice system when it concluded the record did not affirmatively show the defendant understood her right to a jury trial. (*Id.* at p. 437.)

Hernandez also contends his waiver was invalid because the court did not ask whether he had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether he had any questions about the waiver.

19

While *Sivongxxay* suggested inquiring about counsel's discussions with the defendant as a way to ensure the defendant comprehends the jury trial right, ultimately, a court must look to the totality of the circumstances and the unique circumstances of each case. (*Sivongxxay, supra*, 3 Cal.5th at pp. 166-167.) The record here shows defense counsel discussed the waiver with Hernandez multiple times. Additionally, because Hernandez changed his mind after undergoing a jury trial on the charged offenses, he knew what he was foregoing by waiving a jury trial on the aggravating factors. This is distinguishable from *People v. Blancett* (2017) 15 Cal.App.5th 1200, on which Hernandez relies, where the court appointed defense counsel moments before the defendant entered his waiver, and there was no record of a discussion between the defendant and his counsel prior to the waiver. (*Id.* at p. 1206.)

In sum, considering the totality of the circumstances, the record affirmatively demonstrates Hernandez's jury waiver was knowing and intelligent.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

RUBIN, J.

20